Filed 1/22/25  Curtis v. Vigil CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTOPHER CURTIS,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>AMANDA VIGIL,<br><br>Defendant and Appellant. | F088567<br><br>(Super. Ct. No. BDA-16-003486)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Cynthia L. Loo, Judge.

Amanda Vigil, in pro. per., for Defendant and Appellant.

Christopher Curtis, in pro. per., for Plaintiff and Respondent.

-ooOoo-

In this child custody dispute between Amanda Vigil (mother) and Christopher Curtis (father) concerning their nine-year-old daughter, A.C. (daughter), mother appeals from a family court order granting the parents joint legal and physical custody of daughter, with primary custody awarded to mother, and giving father midweek and weekend visits twice per month.  Mother contends the family court abused its discretion in issuing the order because there was no showing of changed circumstances to permit the

court to modify the parties' preexisting joint custody arrangement and it failed to properly weigh the evidence. She also asserts the family court failed to implement safeguards against exposing daughter to inappropriate content while in father's care and improperly awarded custodial time to father during times when he was unavailable due to his work schedule. Finally, mother argues the family court's handling of the case was marked by inconsistent application of legal procedures, unequal treatment of the parties, and a refusal to correct procedural errors.

Mother's claims of error fail because she has not provided this court with an adequate record from which to meaningfully evaluate the merits of her arguments. In view of this basic failure, mother's burden as the appellant remains unmet and the presumption that the order of the family court is correct prevails. Accordingly, we are required to affirm the family court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

This case began in September 2016, when the County of Kern filed a complaint against father for child support when daughter was one-year old. A stipulated judgment was entered in May 2017, and child support was modified in January 2021.

On April 2, 2024,[1] when daughter was nearly nine years old, father filed a request for order in which he asked the family court to award he and mother joint legal and physical custody of daughter and grant him visits on alternate weekends and certain weekdays. The family court denied father's request to waive court fees and the register of actions shows he was required to pay a filing fee.

Father asserted the requested orders were in daughter's best interest because they would: (1) help daughter's emotional development, mental health security, and happiness to allow her to grow to be a well-adjusted adult; (2) allow daughter to develop a permanent bond with father and close relatives; (3) give daughter a sense of security and

---

[1] All subsequent references to dates are to dates in the year 2024, unless otherwise indicated.

familiarity of affection with father and close relatives; and (4) contribute to daughter's social and academic success and confidence.

Father stated the following in support of his request. When he and mother separated in 2016, they had disputes over such things as parenting schedules and financial matters, but there were periods when they were able to co-parent. Regardless of their differences, daughter's well-being and happiness remained their priority. Father attended daughter's doctor's appointments and school activities to ensure he was there for her in any way possible. Over time, father's communication with daughter had diminished significantly, and the four days he spent with her each month did not feel like quality parenting time but rather like weekend babysitting.

Father further stated that his bond with daughter, along with the bond she had with close relatives such as grandparents, cousins, aunts, and uncles, was strong, but he believed daughter was missing out on valuable time with her extended family. Father sought the court's intervention to allow him to play an active role as a father and to witness daughter's growth into a happy and well-adjusted adult. Father had filed a petition in 2017, but he did not follow through with it due to the cooperative co-parenting arrangement he had with mother. Circumstances had changed around the onset of the COVID-19 pandemic. Father's sole aim was to secure more time with daughter to maintain and nurture their close and healthy bond.

On April 10, father filed a request to reschedule the hearing on his request, which was set for May 6. The family court granted the continuance and rescheduled the hearing for May 23. The parties were ordered to attend a mediation conference on May 16.

At the May 23 hearing, the family court granted mother's request to continue the hearing as she had recently retained counsel. The continued hearing was set for July 17. At the July 17 hearing, the family court granted another continuance to July 30 so mother could file a responsive declaration.

Mother, through her attorney, filed a responsive declaration on July 29, in which she stated she did not consent to father's request, but she did consent to maintaining the status quo and enforcing the current arrangement in written orders. Mother believed father had not met his burden of showing a material change in circumstances required to make custody and visitation changes. Mother believed his proposal would drastically change daughter's environment and was counterintuitive to what he claimed he wanted to achieve. Mother explained that her two older children visit father because he raised them with mother from 2011 to 2016, while she and father were together, and he had been a father to them. Daughter, however, is father's only biological child and his petition pertains only to her, and granting his request would break up the family.

The parties' current arrangement was for all her children to live with her full time, with her older three children visiting father from Friday at 5:00 p.m. to Sunday at 7:00 p.m., and the parties splitting Thanksgiving and Christmas holidays. Daughter, who was in the third grade, had been on the honor roll for several years, and she was happy and healthy. Mother's income was nearly double father's income and she had provided daughter's health, vision, and dental insurance since daughter's birth. Mother's communication with father had not been great for the past two years—he made inappropriate comments to mother, he sometimes overstepped and asked for redundant information to force mother to speak with him, and repeatedly called daughter's school to put himself as first contact on the parental notification app to excuse absences despite mother asking him not to do that. Father changed the address at daughter's doctor's office to his residence, which created a billing nightmare for mother. Father claimed he did that so he could be a more involved father. Mother tried to create healthy boundaries while keeping father involved in extracurricular activities and some extra holidays, such as inviting him to go trick or treating on Halloween.

Over the past year, mother did not ask father to pay half of daughter's extra expenses, such as fundraisers or yearbooks, because father complained that it was too

4.

expensive for him, although father also complained when mother did not include him. Father did not speak to her about wanting to change custody before he served her with his request. Mother wanted father to engage in parenting self-help, as she herself went to parenting classes and read books to help her be a better parent and co-parent. Mother believed father was motivated by finances and child support rather than concern over daughter. Father had petitioned for custody in 2017, but he cancelled the petition when mother agreed to close child support.

Mother raised other issues that gave her serious concern. Daughter broke her elbow on May 26 during a visit with father, and she was in a cast. Mother took daughter to her orthopedic appointments and was told the fracture was unstable. The doctor restricted daughter's activities, including prohibiting jumping. Mother relayed this information to father on May 30, but when the children returned to mother's home from a visit with father, daughter told mother she played on a play structure. Mother told father about her concern that he was not following the doctor-ordered restrictions. Father denied any wrongdoing and explained he knew daughter's limits and she was sitting on a swing. Father wanted daughter to make her own decisions and mother did not believe this was the best way to handle daughter.

Mother said her two older children who visit father expressed serious allegations after a visit at the end of June. They said father allowed all three children to use his cell phone during visits to play games and watch videos, and he told them if they saw anything weird, they should "just keep scrolling past it." The older children took that to mean inappropriate photos of him or others. Her older daughter told mother she accidentally saw an inappropriate picture that father took of his private parts, and her son told her he had seen pornography on the cell phone. The older children told her they preferred not to visit father, but they wanted to go so daughter would not be alone. Mother started therapy for her older daughter at that daughter's request.

Minute orders of the hearings show the following. At the July 30 hearing, both father and mother testified. The family court continued the hearing to August 1 and then to August 12 for "minor child" to testify. Father, mother, and daughter all testified at the August 12 hearing, which was continued to August 23 for a further hearing.

Mother and daughter testified at the August 23 hearing. The family court issued custody and visitation orders. The family court ordered joint legal and physical custody with primary custody awarded to mother and the right of reasonable visitation to father. Father was granted weekend visitation on the second and fourth weekends of each month, from Thursday after school to Sunday at 7:00 p.m., and midweek visitation on the first and third weeks of each month from Wednesday after school to Thursday drop off at school. The court further ordered that daughter shall be in bed at 8:30 p.m. and "no access to the phone." The court made orders with respect to holidays and school breaks.

The order states that if either parent requires childcare while the child is in that parent's custody, "the other parent must be given first opportunity, with as much prior notice as possible, to care for the child before other arrangements are made. Unless specifically agreed or ordered by the court, this order does not include regular child care needed when a parent is working." Father was ordered to notify mother who was transporting daughter to school and paternal grandmother was prohibited from being involved in transporting daughter. Mother's attorney was ordered to prepare an order after hearing.[2]

---

[2] Mother appealed from the August 23 minute order. Since the family court directed mother's counsel to submit an order after hearing to the court, an appeal does not lie from the minute order, but only from the formal order filed and signed by the court. (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1090–1091 [minute order not appealable if the court directs preparation of a formal order]; *In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 677 [where a formal order is required, an appeal does not lie from minute order].) We informed the parties we intended to take judicial notice of the formal order after hearing signed and filed on September 6, and construe mother's notice of appeal as being taken from the order after hearing. (Cal. Rules of Court, rule 8.104(d); see *Vitkievicz v. Valverde* (2012) 202 Cal.App.4th 1306, 1310, fn. 2.) We invited the parties to respond to our proposed course of action. Both mother and father responded and agreed with our

**<u>DISCUSSION</u>**

*Applicable Law and Standard of Review*

"California's statutory scheme governing child custody and visitation determinations is set forth in the Family Code…. Under this scheme, 'the overarching concern is the best interest of the child.' " (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955; see Fam. Code, §§ 3011, 3020, 3040.)

For purposes of making an initial or temporary custody determination, "[t]he court and the family have 'the widest discretion to choose a parenting plan that is in the best interest of the child.' " (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31–32.) When the parents are unable to agree on a custody arrangement, the trial court must determine the best interest of the child by setting the matter for an adversarial hearing and considering all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents. (*In re Marriage of Brown & Yana*, *supra*, 37 Cal.4th at pp. 955–956.)

Once the trial court has entered a final or permanent custody order, the parent seeking to modify the final judicial determination for legal and physical custody can do so only on a showing that there has been a significant " 'change of circumstances' " indicating that a different custody arrangement would be in the child's best interest. (*In re Marriage of Brown & Yana*, *supra*, 37 Cal.4th at p. 956 [noting that changed circumstances test is a variation on the best interest standard and recognizes the need for stability in custody arrangements]; *In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 37.) If a requested modification would alter only the parenting schedule or the visitation arrangements, but would leave the existing custody the same, the change of circumstances rule does not apply, and the trial court simply considers the ordinary best

---

proposal. Accordingly, we take judicial notice of the September 6 order after hearing and construe mother's notice of appeal as being taken from that order.

interest of the child standard. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077–1080.)

Appellate review of custody and visitation orders is highly deferential. "The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] *The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child.* We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32, italics added; see *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1087–1088.) "The test is not whether this court would have made the same order or whether the trial court could have reasonably made some other order, but 'whether the trial court could reasonably have concluded that the order in question advanced the "best interest" of the child.' " (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 595.) " '[I]t is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.' " (*In re Marriage of Loyd* (2003) 106 Cal.App.4th 754, 759.)

To the extent an appealing party challenges the sufficiency of the evidence undergirding the trial court's custody ruling, we affirm the trial court's ruling if it is supported by any substantial evidence. (*Catherine D. v. Dennis B.* (1990) 220 Cal.App.3d 922, 931.) " ' "An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the trier of facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal. Where minds may reasonably differ, it is the trial judge's discretion and not that of the appellate court which must control." ' " (*Ibid.*) Additionally, an abuse of discretion will be found if the trial court applied the wrong legal standard to the issue at hand. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85.)

*Principles of Appellate Practice*

Before turning to mother's arguments, we summarize the standards that apply to appeals. We recognize that mother is representing herself on appeal, but these same standards apply whether the parties represent themselves or the parties are represented by counsel. (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210 [self-represented litigant is "treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys"].)

Orders challenged on appeal are presumed to be correct, and it is the appellant's burden to affirmatively show that the trial court erred. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is also the appellant's burden to show prejudice from any error. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) The California Constitution permits reversal only if "the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) The Code of Civil Procedure provides that appealed judgments and orders may be reversed only if the record shows that an error was "prejudicial"; the error caused appellant "substantial injury"; and absent the error, "a different result would have been probable." (Code. Civ. Proc., § 475.)

An appellant must "support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) In addition, an appellant must support the arguments in his or her brief by appropriate reference to the record. (*Air Couriers Intern. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 928; see Cal. Rules of Court,[3] rule 8.204(a)(1)(C) & (a)(2)(C) [appellant's opening brief must include a summary of significant facts limited to matters in the record, with any reference to a matter in the record supported by a citation to the volume and page number of the record].) Finally, failure to provide an adequate record

---

[3]     Subsequent references to rules are to the California Rules of Court.

requires that the issue be resolved against the appellant.  (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.)

***The Family Court's Custody and Visitation Order***

Mother argues the family court was required to apply the changed circumstances rule in deciding father's request but failed to do so, and insufficient evidence was presented at the hearings of a substantial change of circumstances.  She also asserts the family court failed to consider and prioritize daughter's best interests, ignored evidence of emotional and physical harm daughter suffered while under father's care, and disregarded the emotional harm daughter would suffer if the custodial arrangement were changed.  For these reasons, mother argues the family court abused its discretion in making its order.  She further argues the family court violated her due process rights because it "dismissed critical testimony and evidence without proper consideration," which showed judicial bias in father's favor and mandates disqualification.

As we have stated, "[t]he most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance."  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.)  "The appellant has the burden of furnishing an appellate court with a record sufficient to consider the issues on appeal.  [Citation.]  An appellate court's review is limited to consideration of the matters contained in the appellate record."  (*People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534.)  In the absence of an adequate record to support the appellant's claim of error, "we presume the judgment is correct."  (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.)

Rule 8.120(b) provides that "[i]f an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings …."  Most commonly, a reporter's transcript serves as such a record, but the rule also provides for other options, such as an

10.

agreed statement under rule 8.134,[4] or a settled statement under rule 8.137.[5] (Rule 8.120(b).) When an appellant completes the notice designating the record on appeal, the notice must specify whether the appellant elects to proceed with or without a record of the oral proceedings in the trial court. (Rule 8.121(b)(1)(C).) If the appellant elects to proceed with such a record, the notice must specify which form of the record listed in rule 8.120(b) the appellant elects to use, whether a reporter's transcript, agreed statement, or settled statement. (Rule 8.121(b)(1)(C).)

In her amended notice designating the record on appeal, mother elected to proceed without a record of the oral proceedings. Thus, we do not have a record of the family court hearings and the testimony given at those hearings. In so electing, mother acknowledged, as stated on the form, that "without a record of the oral proceedings in the superior court, the Court of Appeal will not be able to consider what was said during those proceedings in deciding whether an error was made in the superior court proceedings." Mother's appellate arguments, however, require us to consider what was said at the custody hearings so we can ascertain whether the family court failed to apply the correct standard, whether any evidence of changed circumstances was presented at the hearing, and whether the family court properly considered daughter's best interests or weighed the evidence in issuing its custody ruling.

Mother acknowledges the minute orders of the hearings, which she was provided after being told a transcript of the August 12 hearing did not exist, are insufficient to document what occurred at the hearings. Mother further recognizes that "key moments

---

[4]    An agreed statement "explain[s] the nature of the action, the basis of the reviewing court's jurisdiction, and how the superior court decided the points to be raised on appeal. The statement should recite only those facts needed to decide the appeal and must be signed by the parties." (Rule 8.134(a)(1).)

[5]    "A settled statement is a summary of the superior court proceedings approved by the superior court." (Rule 8.137(a).) An appellant's proposed settled statement must contain a statement of the points the appellant is raising on appeal and a condensed narrative of the oral proceedings at issue. (Rule 8.137(d)(1) & (d)(2)(A).)

during the trial were not properly captured in the transcripts," which prevents this court from being able to fully review the family court's decision. For example, she states her testimony at the end of the trial regarding daughter's emotional distress and reluctance to change the custody arrangement is critical to understanding the negative impact of the court's order, and father could not provide a clear reason for requesting a modification. Mother asserts "the failure to capture this in the transcript constitutes a significant procedural error" and violates her due process rights.

Mother, however, misunderstands that it was her burden, not the family court's, to provide a record of the oral proceedings if she intended to challenge the family court's analysis of the issues before it or the sufficiency of the evidence to support its decision. Although a reporter's transcript was unavailable because a court reporter was not present at the hearings, mother could have obtained an agreed or settled statement of the proceedings. She failed to do so. Because the record on appeal is incomplete and materially inadequate due to mother's failure to provide us with an adequate record, we cannot meaningfully review mother's claims. Therefore, we are required to presume there was sufficient evidence to support the family court's decision and the family court properly weighed the evidence.

Mother also challenges the substance of the family court's order. Although the family court's order states that daughter shall have "no access to the phone," mother argues the family court failed to implement safeguards against exposing daughter to inappropriate content. But we cannot assess whether the family court erred in this respect without a record of the oral proceedings, as we cannot tell whether mother requested safeguards, what safeguards were proposed or considered, or what evidence was presented concerning the need for additional safeguards.

Mother also asserts the family court improperly awarded custodial time to father during times that he was unavailable due to his work schedule, which required him to have a third party get daughter ready for school and transport her there. A family court

may not base its custody decision on the fact that one parent would place the child in daycare while he or she worked absent evidence that the parent's work schedule has a negative impact on the child's best interests. (*In re Marriage of Loyd*, *supra*, 106 Cal.App.4th 761–762; *Burchard v. Garay* (1986) 42 Cal.3d 531, 539–540.) The family court, therefore, could award visitation to father even if he needed to arrange childcare during part of that time. Without a record of the oral proceedings, however, we cannot determine whether there was evidence that father's work schedule had a negative impact on daughter's best interests.

In sum, mother's arguments concerning the sufficiency of the evidence and the substance of the family court's order are unreviewable because we do not have a record of the oral proceedings.

### *Procedural Issues*

Mother also contends the family court's handling of the case was marked by inconsistent application of legal procedures, unequal treatment of the parties, and a refusal to correct procedural errors. She specifically asserts: (1) she was denied equal protection because she was charged filing fees in the superior court and on appeal while father, whose fee waiver the family court denied, was not; (2) since the case originated as a child support case, she was unfairly required to serve the child support attorney while father was not; and (3) the superior court rejected her filings without notice or explanation, which required her to monitor the public court website to discover the rejections.

With respect to the filing fees, the register of actions shows father was required to pay filing fees in the family court, thus there does not appear to be any inequality with respect to the payment of filing fees as both parties were required to pay them. Moreover, nothing prevented mother from filing her own request for a fee waiver if she were unable to pay. Had mother made a prima facie showing of indigency, she was

13.

entitled to proceed without paying the filing fee. (*In re Marriage of Reese* (1977) 73 Cal.App.3d 120, 124; *Boddie v. Connecticut* (1971) 401 U.S. 371.)

With respect to serving the child support attorney and the rejection of mother's filings, we do not have an adequate record to show that these issues occurred. The superior court rejected mother's responsive filing on July 23 because she did not pay the filing fee and a form was missing dates, but mother was advised of the deficiencies and given an opportunity to correct them, which she presumably did as the superior court accepted her filing on July 29. The proof of service on mother's responsive filing shows that it was served on father and no other party. There is nothing in the record to suggest mother's filings were rejected on multiple occasions without notice or explanation, as she claims, or that she was required to serve the child support attorney.

Even if mother's filings were repeatedly rejected and she was required to serve the child support attorney when father was not, mother has not demonstrated she suffered prejudice as a result. Mother asserts her ability to defend herself effectively was hampered, but she does not explain how she was hampered or what evidence she would have presented in the absence of these purported deprivations of due process. She asserts that by rejecting her filings, she was placed at a significant disadvantage when the family court denied her the opportunity to fix mistakes and make adjustments in a timely manner, but she does not explain what she would have corrected in her response or how this would have made a difference in the family court's custody and visitation order.

As we have stated, it is mother's burden as the appellant not only to show error, but also to show prejudice from that error. (*Century Surety Co. v. Polisso*, *supra*, 139 Cal.App.4th at p. 963.) "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice." (*Ibid*.) Reversal is only required where the appellant demonstrates, based on sufficient legal argument supported by citation to authorities and the record, that it is " 'reasonably probable that a result more favorable to the appealing party would have been reached in

14.

the absence of the error,' " meaning the appellant must show error and that the error likely affected the outcome. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.)

Due to the absence of a record of the oral proceedings, we are unable to assess whether any purported error was prejudicial. Although mother claims she was disadvantaged, mother does not demonstrate it is reasonably probable the custody hearing's outcome would have been more favorable to her had the family court not required her to serve the child support attorney or had not rejected her filings. Mother was able to file a response and present testimony at the hearings. She does not point to what additional evidence she would have presented absent any error by the trial court.

In sum, without an adequate record for review, namely, the oral proceedings that include the witness testimony, the issues mother raises on appeal must be resolved against her and we have no choice but to affirm the family court's order. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

### *The Request for Judicial Notice*

Finally, mother asks us to take judicial notice of events that occurred after the family court issued its order in this case, which she asserts show the ongoing conflict and instability that resulted from the family court's order. She claims she submitted relevant evidence to the family court on October 7, including text messages, which she could provide to this court if needed for review. She argues for the first time in her reply brief that these events are relevant to show that father violated the right of first refusal in the custody order, thereby demonstrating his failure to follow court orders and disregard of mother's custodial rights.

An appeal, however, reviews the correctness of the order as of the time it was made upon matters that were before the trial court. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Our review is governed by the appellate record and with rare exception, we are not permitted to consider evidence that is not part of the record on appeal. (*Ibid.*)

" 'Reviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2; see Evid. Code, §§ 452, subd. (d), 453.)  No exceptional circumstances appear here.  Accordingly, we deny mother's request for judicial notice.

## <u>DISPOSITION</u>

The family court's September 6, 2024 order is affirmed.  Costs on appeal are awarded to respondent.


                                       DE SANTOS, J.

WE CONCUR:


FRANSON, Acting P. J.


SMITH, J.